1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   FRANK JAIME,                      )   NO. EDCV 11-01827 SS
                                       )
12                  Petitioner,        )
                                       )
13           v.                        )   **MEMORANDUM DECISION AND ORDER**
                                       )
14   DALINDA HARMAN, Acting Chief,     )
                                       )
15                  Respondent.        )
     _____ )
16

17                                I.

18                            INTRODUCTION

19

20        On November 14, 2011, Frank Jaime ("Petitioner"), a California

21   state prisoner[1] proceeding pro se, filed a Petition for Writ of Habeas

22   _____

23        [1]  Petitioner is currently being held at the Tallahatchie County
     Correctional Facility in Tutwiler, Mississippi, under contract with the
24   California Department of Corrections and Rehabilitation. "A petitioner
     for habeas corpus relief must name the state officer having custody of
25   him or her as the respondent to the petition." Stanley v. California
     Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994); see also Cal. Code
26   Regs., tit. 15, § 3379(a)(9)(I) (providing that an inmate transferred to
     an out-of-state facility remains under the legal custody of the CDCR).
27   The Court therefore substitutes as Respondent Dalinda Harman, Acting
     Chief of the Contract Beds Unit of the CDCR, for her predecessor
28   pursuant to Federal Rule of Civil Procedure 25(d).

Corpus pursuant to 28 U.S.C. § 2254 (the "Petition").[2]  On November 21, 2011, the Court issued an Order To Show Cause Why This Action Should Not Be Dismissed As Untimely (the "Order to Show Cause" or "OSC") because the Petition appeared untimely on its face.  On December 2, 2011, Petitioner filed an Answer to the Order to Show Cause (the "Response"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons discussed below, the Petition is DENIED and this action is DISMISSED WITH PREJUDICE.

## II.

### PRIOR PROCEEDINGS

According to the Petition, on November 9, 2008, correctional officers at the California Rehabilitation Center in Norco, California, where Petitioner was then housed, discovered eighteen bindles of an unidentified substance under Petitioner's pillow. (Petition at 12; id., Exh. G, at 1).[3]  Officers suspected that the contraband was heroin and,

---

[2]  Under the "mailbox rule," a pleading filed by a pro se prisoner is deemed to be filed as of the date the prisoner delivered it to prison authorities for mailing, not the date on which the pleading may have been received by the court.  See Houston v. Lack, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000).  Here, the Court cannot calculate the filing date of the Petition pursuant to the mailbox rule because the attached proof of service states that Petitioner did not deliver the Petition to prison officials for mailing until November 30, 2011, two weeks after the Court actually received the Petition.  (See Petition at 60). Petitioner also dated his signature on the Petition November 30, 2011. (Id. at 9).  As these dates appear to be an error, the Court declines to apply the mailbox rule.

[3]  The Petition consists of a nearly blank form Petition, two Memoranda of Points and Authorities, and Exhibits A-K.  The Court will

1  upon receiving a positive result from a preliminary test conducted using
2  a "Jr. Nark Kit," immediately placed Petitioner in Administrative
3  Segregation. (Petition at 14; id., Exh. F, at 1). On November 13,
4  2008, Petitioner "went before the Institutional Classification Committee
5  and was informed . . . that 'the suspected narco[t]ics ha[d] been sent
6  to a toxicology lab for testing.'" (Petition at 13) (quoting Initial
7  ASU Review report, id., Exh. G, at 1). The lab reported receiving the
8  contraband on December 19, 2008, and issued a report confirming that the
9  contraband was heroin on January 5, 2009. (Id., Exh. I, at 1). The
10 CDCR completed a Form 115 Rules Violation Report ("RVR") on January 5,
11 2009 informing Petitioner of the lab's findings. (Id., Exh. H, at 1).
12 Petitioner states that he received a copy of the RVR on January 12,
13 2009. (Petition at 15). On February 6, 2009, Petitioner participated
14 in a disciplinary hearing in which he was found guilty of trafficking
15 in drugs. (Id. at 16). As punishment, Petitioner forfeited one hundred
16 eighty (180) days of credit, (id., Exh. J at 1), which extended his
17 anticipated release date from March 28, 2012, (id., Exh. G at 1), to
18 September 24, 2012. (Petition at 28).

19

20    On February 10, 2011, Petitioner filed a habeas petition in the
21 Riverside Superior Court.[4] (Id. at 17; id., Exh. D at 1). The petition
22 was denied on March 14, 2011 on the grounds that the CDCR properly

23

24
25 cite to the Petition and accompanying memoranda as though they formed a
   single, consecutively paginated document. The Court will cite to the
26 Exhibits by letter and consecutive page number within each separate
   Exhibit.

27
28 [4] The Court is unable to apply the mailbox rule to Petitioner's
   state habeas petitions because Petitioner has not included copies of
   their signature pages or proofs of service with the Petition.

1   complied with procedural regulations governing disciplinary hearings and
2   there was "'some evidence' to support the decision of the Department of
3   Rehabilitation and Corrections regarding the Petitioner's guilt on the
4   matters of which he was accused." (Id., Exh. A at 2).  On May 12, 2011,
5   Petitioner filed a habeas petition in the California Court of Appeal,
6   (Petition at 18; see also California Appellate Courts Case Information
7   Website, Case No. E053548, Fourth Appellate District, Division Two,
8   http://appellatecases.courtinfo.ca.gov).[5]  The court denied the petition
9   on May 24, 2011.  (Petition, Exh. B at 1).  On June 10, 2011, Petitioner
10  filed a habeas petition with the California Supreme Court.  (See
11  California Appellate Courts Case Information Website, Case No. S193909,
12  http://appellatecases.courtinfo.ca.gov).  The supreme court denied the
13  Petition on July 20, 2011.  (Petition, Exh. C at 1).  Petitioner filed
14  the instant Petition on November 14, 2011.

16                                  **III.**

17                          **PETITIONER'S CLAIM**

19      Petitioner's sole claim for federal habeas relief alleges that his
20  Due Process and Eighth Amendment rights were violated because he was
21  forced to forfeit 180 days credit following a disciplinary hearing, even
22  though he did not receive a copy of a Form 115 RVR informing him of the
23  charges against him until January 12, 2009, sixty-four days after the
24  contraband was discovered on November 9, 2008.  Petitioner argues that
25  the forfeiture following this "unreasonable delay" violated California

27      [5]  The Court takes judicial notice of Petitioner's state court
    records.  Porter v. Ollison, 620 F.3d 952, 955 n.1 (9th Cir. 2010)
28  (taking judicial notice of court dockets, including those available on
    the Internet, from petitioner's state court proceedings).

Code of Regulations Title 15, section 3320, which prohibits the denial or forfeiture of credits when an inmate is "not provided with a copy of the CDC Form 115 within 15 days after the discovery of the information leading to the charges . . . ."  (Petition at 14; see also Cal. Code Regs., tit. 15, § 3320(a) & (f)).  As relief, Petitioner asks the Court to "[i]ssue an order for the California Department of Corrections and Rehabilitation to restore the 180 days of lost behavior credits to the [P]etitioner."  (Petition at 19).

## IV.

### DISCUSSION

**A.   AEDPA's Limitations Period Governs The Petition**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which effected amendments to the federal habeas statutes, applies to the instant Petition because Petitioner filed it after AEDPA's effective date of April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 322-23, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  AEDPA dramatically altered federal habeas litigation by imposing a specific time limit on the filing of federal habeas petitions.  See Rhines v. Weber, 544 U.S. 269, 274, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).  By creating a limitations period, Congress intended "to reduce delays in the execution of state and federal criminal sentences."  Woodford v. Garceau, 538 U.S. 202, 206, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003).

Here, Petitioner is challenging the decision of the disciplinary board to forfeit 180 days of good time credit.  Therefore, the

1  applicable one-year limitations period under AEDPA is that set forth in
2  28 U.S.C. section 2244(d)(1)(D), which provides that the statute of
3  limitations begins to run on "the date on which the factual predicate
4  of the claim or claims presented could have been discovered through the
5  exercise of due diligence." See Mardesich v. Cate, 668 F.3d 1164, 1170
6  (9th Cir. 2012); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004)
7  (holding that subsection (D) applies to habeas claims based on
8  administrative decisions "such as parole and disciplinary boards")
9  (citing Redd v. McGrath, 343 F.3d 1077, 1082 (9th Cir. 2003)).

11  **B.    Petitioner Did Not File His Petition Within The Limitations Period**

13      The Ninth Circuit has explained that the "factual predicate"
14  triggering the commencement of AEDPA's one-year statute of limitations
15  period for challenges to prison administrative decisions occurs when the
16  decision becomes "final." Redd, 343 F.3d at 1084 (parole board
17  decision); Shelby, 391 F.3d at 1066 (disciplinary board decision).
18  Disciplinary board decisions generally become final within 30 days of
19  being issued, when the period of time to file an appeal expires. See
20  Cal. Code Regs., tit. 15, § 3084.8(b)(1) (providing 30 days to file an
21  appeal of a prison disciplinary decision).

23      Here, the Disciplinary Board issued its decision on February 6,
24  2009 and it does not appear that Petitioner filed an appeal. (Petition
25  at 16; id., Exh. J at 1). Thus, the Board's decision became final
26  thirty days later, on March 8, 2009. Accordingly, the statute of
27  limitations began to run the following day, March 9, 2009, and expired
28  one year later, on March 9, 2010. Because Petitioner did not file the

1  instant Petition until November 14, 2011, the Petition is untimely by
2  1 year, 8 months, and 5 days, absent tolling.

4  **C.    Petitioner Cannot Receive Statutory Tolling**

6      AEDPA includes a statutory tolling provision that suspends the
7  limitations period for the time during which a "properly filed"
8  application for post-conviction or other collateral review is "pending"
9  in state court.  28 U.S.C. § 2244(d)(2); Bonner v. Carey, 425 F.3d 1145,
10 1148 (9th Cir. 2005).  However, the Ninth Circuit has held that "section
11 2244(d) does not permit the reinitiation of the limitations period that
12 has ended before the state petition was filed."  Ferguson v. Palmateer,
13 321 F.3d 820, 823 (9th Cir. 2003); see also Jiminez v. Rice, 276 F.3d
14 478, 482 (9th Cir. 2001) (concluding that delay in filing state habeas
15 petition until after the AEDPA limitations period had expired "resulted
16 in an absolute time bar to refiling after [petitioner's] state claims
17 were exhausted").  Here, Petitioner cannot receive statutory tolling
18 because he did not file his first state habeas petition until February
19 10, 2011, eleven months after the period had already expired on March
20 9, 2010.  (See Petition at 17).

22     The Court expressly advised Petitioner that he had the burden of
23 proof to demonstrate that he was entitled to statutory tolling.  (OSC
24 at 4); see also Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010) ("[The
25 petitioner] bears the burden of proving that the statute of limitations
26 was tolled.").  In his Response, Petitioner contends that he is entitled
27 to tolling because he had to overcome "numerous Race-based lockdown[s]"
28 and was involuntarily located to two out-of-state prisons, where he

found it "extremely hard to access the law library." (Response at 2). These arguments, however, are more properly considered in the context of equitable tolling and do not address the fact that the AEDPA limitations period had already expired before he filed his first state habeas petition. Thus, the Court concludes that Petitioner cannot receive statutory tolling.

**D.   Equitable Tolling Cannot Render The Petition Timely**

In addition to the statutory tolling provided for by Section 2244(d)(2), the AEDPA limitations period may also be subject to equitable tolling if a petitioner can demonstrate that he diligently pursued his rights and "extraordinary circumstances" beyond his control made it impossible to timely file his petition. Malcolm v. Payne, 281 F.3d 951, 962-63 (9th Cir. 2002) (internal quotation marks omitted). A petitioner seeking equitable tolling bears the burden of establishing both: (1) that he has diligently pursued his rights; and (2) that some extraordinary circumstance stood in his way. See Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010). The "extraordinary circumstances" threshold is set "very high" and means that equitable tolling will not be available in most cases. Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). The Ninth Circuit has emphasized that determinations of "whether there are grounds for equitable tolling are highly fact-dependent." Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc).

Broadly construed, Petitioner's Response to the OSC appears to claim that he is entitled to equitable tolling from March 8, 2009, when

8

1  the decision of the Disciplinary Board became final, through February
2  10, 2011, when he filed his first state habeas petition.  As noted
3  above, Petitioner argues that he was unable to file his petitions sooner
4  because he "had to overcome numerous Race-based lockdown[s] during the
5  time the Court pointed out as the claims being filed late" and was
6  involuntarily relocated to two out-of-state prisons. (Response at 2).
7  Petition also argues that "[b]ecause of all the relocation, [P]etitioner
8  has found it is extremely hard to access the law library in these out-
9  of-state prisons . . . ." (Id.).

10

11      The Court specifically advised Petitioner that he bears the burden
12  of proof to demonstrate that he is entitled to equitable tolling. (OSC
13  at 4) (citing Miranda, 292 F.3d at 1065).  Petitioner's vague claims of
14  lockdowns, transfers, and limited access to a law library are
15  insufficient, by themselves, to qualify for equitable tolling as they
16  are nothing more than the ordinary inconveniences of prison life.  For
17  example, the Ninth Circuit has found that "[o]rdinary prison limitations
18  on [a petitioner's] access to the law library and copier . . . were
19  neither 'extraordinary' nor made it 'impossible' for him to file his
20  petition in a timely manner.  Given even the most common day-to-day
21  security restrictions in prison, concluding otherwise would permit the
22  exception to swallow the rule . . . ." Ramirez v. Yates, 571 F.3d 993,
23  998 (9th Cir. 2009); see also Frye v. Hickman, 273 F.3d 1144, 1146 (9th
24  Cir. 2001) (rejecting argument that lack of access to library materials
25  automatically qualified as grounds for equitable tolling).

26

27      Other courts have also concluded that such ordinary difficulties
28  of prison life are insufficient to qualify for equitable tolling.  See,

1  e.g., Corrigan v. Barbery, 371 F. Supp. 2d 325, 330 (W.D. N.Y. 2005)
2  ("In general, the difficulties attendant on prison life, such as
3  transfers between facilities, solitary confinement, lockdowns,
4  restricted access to the law library, and an inability to secure court
5  documents, do not by themselves qualify as extraordinary
6  circumstances."); Lindo v. Lefever, 193 F. Supp. 2d 659, 663 (E.D. N.Y.
7  2002) ("Transfers between prison facilities, solitary confinement,
8  lockdowns, restricted access to the law library and an inability to
9  secure court documents do not qualify as extraordinary circumstances.");
10 Adamas v. Hedgpeth, 2012 WL 1032783 at *4 (C.D. Cal. Feb. 28, 2012)
11 ("[L]ockdowns, restricted library access and transfers do not constitute
12 extraordinary circumstances sufficient to equitably toll the statute of
13 limitations. Prisoners familiar with the routine restrictions of prison
14 life must take such matters into account when calculating when to file
15 a federal petition.") (internal quotation marks omitted).

16

17      Petitioner has not presented any facts to distinguish his
18 circumstances from those in which federal courts have rejected claims
19 of equitable tolling based on the typical limitations of prison life.
20 Vague assertions that lockdowns prevented the timely filing of a
21 petition are insufficient to justify equitable tolling, particularly
22 because Petitioner fails to specify when the lockdowns occurred, how
23 long they lasted, and why they prevented his access to the library. For
24 the same reasons, Petitioner's claims that transfers to out-of-state
25 prisons impeded his ability to conduct library research also fail.
26 Indeed, Petitioner has not shown any need for extensive library time to
27 file his Petition. The Petition raises a single claim based on an
28 alleged violation of a California regulation governing when an inmate

must be given notice of disciplinary charges against him.  Petitioner admits that he already knew of this regulation as of the date of the disciplinary hearing because he argued to the hearing officers that he improperly received late notice of the charges:

> On February 6, 2009, [Petitioner] finally went before the disciplinary officer for hearing.  At this time, he brought to the disciplinary hearing officers [sic] attention that the correctional officers did not follow procedure regarding the processing of the evidence, and that in their attempts to mask the unreasonable delay and not have to submit a written delay request [sic], correctional officers simply sent out the evidence, 40 days late, to the toxicology lab and issued the Rules Violation Report form C.D.C. 115 to the inmate within the 15 day time limitation [sic] in hopes the wrongs of the officers would not be discovered.

(Petition at 16).  Consequently, Petitioner knew the legal and factual bases for his sole claim on the date of disciplinary hearing, which was held more than two years before he filed his first state habeas petition.  Petitioner has failed to demonstrate that his ability to bring this claim was in any way hampered by lockdowns, transfers, or limited library access.

In sum, the Court concludes that equitable tolling cannot render the Petition timely.  Because Petitioner filed the current Petition on November 14, 2011, more than one year and eight months after the filing deadline had passed, it is barred by AEDPA's statute of limitations.

11

**E.    Petitioner's Actual Innocence Claim Does Not Excuse His Untimely Filing**

Petitioner contends in his Response to the OSC that his untimeliness should be excused because he "is actually innocent of committing the charged crime; hence his procedural default cannot be used to deny him the right to have his habeas claim heard on the merits." (Response at 3).  In <u>Schlup v. Delo</u>, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court held that the principles of comity and finality that inform the procedural default doctrine must yield to avoid a "fundamental miscarriage of justice." <u>Id.</u> at 320-21.  To establish such a claim, a petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Id.</u> at 327 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

A <u>Schlup</u> claim of innocence does not itself constitute a constitutional claim, but is instead "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1139-40 (9th Cir. 2007) (en banc) (internal quotation marks omitted).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324.  To meet <u>Schlup</u>'s "threshold requirement," a petitioner must "persuade[] the district

court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329; see also Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) ("[W]here an otherwise time-barred habeas petitioner demonstrates that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner may pass through the Schlup gateway and have his constitutional claims heard on the merits.").

Assuming, without deciding, that Schlup applies to prison disciplinary proceedings, Petitioner's allegations do not satisfy Schlup's evidentiary requirements.[6]   To enter the Schlup actual innocence gateway, "[t]he evidence of innocence must be so strong that a court cannot have confidence in the outcome of the trial." Lee, 653 F.3d at 937 (internal quotation marks omitted).   Petitioner, however, cites to no evidence at all, much less new evidence, to support his bald assertion of actual innocence.   Without any supporting evidence,

---

[6]   While the Court has found several unpublished cases applying the Schlup standard to disciplinary hearings, it has not been able to find any binding precedent holding that Schlup applies in this context.   See, e.g., Stuart v. Singh, 2011 WL 2746096 at *4 n.7 (E.D. Cal. July 14, 2011) (noting the lack of clear authority to apply Schlup to disciplinary hearings while determining in the alternative that petitioner failed to make the "stringent showing" required by Schlup); Parmelee v. Fraker, 2010 WL 546933, *9 (W.D. Wash. Feb. 11, 2010) (applying Schlup to find that petitioner "presents no new evidence demonstrating that it is more likely than not that no reasonable hearing officer would have convicted him in light of new evidence"); Doyle v. Abbott, 330 Fed. Appx. 703, 708 (10th Cir. 2009) (rejecting petitioner's claim that he was actually innocent of disciplinary conviction because he had "presented no 'new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial'") (quoting Schlup, 513 U.S. at 324)).

Plaintiff fails to undermine confidence in the disciplinary board's findings, which were based on a laboratory analysis that confirmed that the contraband removed from under Petitioner's pillow was heroin. (See Petition, Exh. I at 1). Thus, the Court concludes that Petitioner cannot pass through the Schlup gateway to excuse the untimeliness of his Petition.

**F.   Even If The Petition Were Not Untimely, Petitioner's Claim Fails On The Merits**

Even if Petitioner's claim were not untimely, it would fail on the merits. Petitioner claims that his rights to due process and to be free from cruel and unusual punishment were violated when the CDCR forfeited 180 days credit for a disciplinary violation even though Petitioner did not receive timely notice of the charges against him. (Petition at 6, 21, 24). Specifically, he alleges that the CDCR should have issued a Form 115 RVR within 15 days after discovering the bindles of contraband under his pillow, not after the CDCR received confirmation from the lab that the contraband was indeed heroin. (Id. at 23). Because he received notice more that fifteen days after the bindles were found, Petitioner argues that the CDCR was barred from forfeiting good time credits under section 3320(f). (Id. at 14).

The Riverside Superior Court rejected Petitioner's habeas claim because "Petitioner received the CDC 115 within 15 days from the date the information leading to the charges was discovered by staff, that is, the required confirmatory laboratory analysis establishing that the item seized is in fact a controlled substance. This is particularly true

14

where the code provides that the field test shall be conducted for screening purposes only.  A loss of worker behavior credits may not occur absent the confirming laboratory analysis."  (Petition, Exh. A, at 2).  The court also found that "[t]here is 'some evidence' to support the decision . . . regarding the Petitioner's guilt on the matters of which he was accused."  (Id.).

To the extent that Petitioner's claim is based solely on a purported violation of the procedural requirements set forth in Cal. Code Regs., tit. 15, § 3320, the claim fails because federal habeas relief is not normally available for violations of state law.  See 28 U.S.C. § 2254(a); Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  How CDCR officials and California courts interpret CDCR regulations to calculate the triggering date for section 3320's notification requirement is not a matter of concern for federal courts.  Nor may a petitioner "transform a state-law issue into a federal one merely by asserting a violation of [federal] due process."  See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

To the extent that Petitioner's claim attempts to present a federal question, it likewise lacks merit.  The Eighth Amendment's prohibition of cruel and unusual punishment is "specifically concerned with the unnecessary and wanton infliction of pain in penal institutions."

15

Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).   Punishment   violates   the   Eighth   Amendment   when   it   is "inconsistent with contemporary standards of decency" and "repugnant to the conscience of mankind." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).   Forfeiture of good time credits following notice and a hearing, even if notice of the charges was delayed, hardly rises to the level of "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.

Petitioner's due process allegations fare no better.   Due process in a prison disciplinary proceeding is satisfied if the inmate receives advance written notice of the charges; an opportunity, when consistent with safety and correctional goals, to call witnesses and present evidence; and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L. Ed. 2d 935 (1974). Additionally, the Supreme Court has found that the revocation of good time credits does not comport with procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record. See Walpole v. Hill, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L.Ed.2d 356 (1985).[7]

---

[7] While Walpole's holding requiring that "some evidence" support the revocation of good time credits pursuant to a disciplinary proceeding appears to remain good law, the Supreme Court rejected the proposition that federal due process is implicated in a state's violation of its own "some evidence" standard in denying parole eligibility. See Swarthout v. Cooke, ___ U.S. __, 131 S. Ct. 859, 862, 178 L. Ed. 2d 732 (2011) (per curiam) (federal due process requires only "minimal" procedures to vindicate state-created liberty interest in parole, i.e., a hearing and statement of reasons why parole is denied).

1    The Supreme Court has determined that due process entitles an

2    inmate to a "brief period of time after [receiving] the [written]

3    notice, no less than 24 hours" to prepare for a disciplinary hearing.

4    Wolff, 418 U.S. at 564.  Petitioner does not challenge that he received

5    written notice more than twenty-four hours before his hearing, that he

6    was able to present arguments and evidence at the hearing, or that he

7    received a written statement of the reasons for the disciplinary board's

8    decision, which is all the process he was due pursuant to clearly

9    established Supreme Court case law.  The Supreme Court has not clearly

10   established, however, that a prison must inform a prisoner of an alleged

11   violation within a specific time from the date it discovered the facts

12   underlying the charge.  Accordingly, even if the Petition were timely,

13   Petitioner's claim that the prison violated its procedures does not

14   warrant federal habeas relief.  See Garrett v. Marshall, 2009 WL 3417786

15   at *3 (C.D. Cal. Oct. 20, 2009) ("Petitioner['s] claim[] that the prison

16   officials violated Cal. Penal Code § 2932(c)(1)(A), and California Code

17   of Regulation, Tit. 15, § 3320 by not providing him with notice of the

18   disciplinary charges within 15 days after discovery of the evidence

19   giving rise to the charges . . . is firmly rooted in state law and thus

20   is not cognizable in a federal habeas corpus petition."); Mercado v.

21   Sandor, 2011 WL 7115952 at *4 (C.D. Cal. Dec. 5, 2011) (same); Rogers

22   v. Horel, 2011 WL 4406361 at *2-3 (N.D. Cal. Sept. 20, 2011) (same).

23   The petition must be denied.

24

25

26

27

28

**V.**

**CONCLUSION**

IT IS ORDERED that: (1) the Petition is DENIED; and (2) Judgment shall be entered dismissing this action with prejudice.

DATED: April 27, 2012

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE